## HUGHES v. THE STATE.

1. One indicted as principal, cannot be convicted on proof showing him to be only an accessory before the fact.
2. As an asssault, with intent to commit murder, is made a felony by the penal code, it is an offence to which there may be accessories.
3. Where the jury, upon an indictment for assault and battery with intent to commit murder, and for an ordinary assault, return a general verdict of guilty, or a verdict finding one defendant guilty of an assault with *intent to kill*, and the other, guilty of an assault and battery, without assessing a fine, it is no error for the court to send the jury out with instructions to return a final verdict.

Writ of Error allowed by this Court to the Circuit Court of Butler.

INDICTMENT against Benjamin Hughes and John S. Hughes.

'The first count is for an assault with intent to commit murder, on one Adams.   The second count is for an ordinary assault and battery.

At the trial, there was no positive evidence that either of the defendants had committed the assault for which they were indicted.   It was shown the assault was committed in the night-time, and secretly, by some person or persons unknown to the individual assaulted, by means of fire arms, loaded with powder and shot.   The principal evidence against the defendants consisted in previous threats to take the life of the prosecutor, and there was some evidence tending to show the defendant had ordered and advised one Goffe to commit the offence—neither of the defendants being present, aiding and abetting in its commission.

The court charged the jury, that if neither of the defendants were present, aiding and abetting in the commission of the offence, but they had ordered and advised it to be done by some other person, and were [thus] accessories before the fact, then the defendants, or either of them, might be found guilty, under the first count of the indictment.

The jury, after an absence of some time, returned into court their verdict, in these words, "We, the jury, find the defendants guilty."   Their counsel then asked that the jury should be polled, which was done, and each juror assented to the verdict.   The solicitor then suggested to the court, that the verdict did not specify on which count the defendants were guilty.   Thereupon the court, without any request from the jury, instructed them as to the form of verdicts, in case they found this way or that, and directed them again to retire, and say in their verdict under which count of the indictment they found the defendants guilty.   The defendants objected to this, but their objection was overruled, and the jury retired.   After some time for deliberation, they returned a verdict in these terms, "We, the jury, find W. S. Hughes guilty of an assault with intent to kill, and Benj. Hughes guilty of an assault and battery."

Thereupon the solicitor again suggested, that an assault with intent to kill, was different from an assault with intent to commit murder, and if the jury intended to find W. S. Hughes guilty of the latter offence, the verdict was insuf-

ficient. He also suggested, that some fine should be assessed against Benjamin Hughes, as he was found guilty of an assault and battery. The court then again proceeding as before, directed the jury to return and consider of their verdict. This was objected to by the defendants.

After a short time, the jury returned the verdict, finding William S. Hughes guilty as charged in the first count of the indictment, and Benjamin Hughes guilty as charged in the second count, and assessed against him a fine of fifty dollars.

The court sentenced Benjamin Hughes to six months imprisonment in the common jail, and W. S. Hughes to ten years confinement in the penitentiary.

The defendants excepted to the several rulings of the court at the trial, and in relation to the several verdicts, and Wm. S. Hughes having been allowed a writ of error, now assigns the same as reasons for reversing the judgment.

WATTS and N. COOK, for the prisoner, insisted—

1. At the common law, an accessory could not be convicted until the trial and conviction of the principal. [1 Chity's C. L. 266; 1 Rus. on C.; 16 Mass. R, 423.] And there must have been an allegation of these facts in the indictment. [Rus. 41.]

2. The statute of frauds (Clay's Dig. 440, § 16,) does not alter the common law, except so far as to authorize the trial and conviction of the accessory, provided the principal has fled from justice, or be dead. And one of these facts must be alledged in the indictment.

3. The first verdict rendered by the jury, in law, amounted to no more than an assault, or an assault and battery. The general finding will be, in favor of life or liberty, referred to the minor charge.

4. The second verdict amounted to nothing more than an assault and battery. [State v. Nancy, 6 Ala. R. 483; State v. Burns, 8 Ala. 313.]

5. The judge had no authority to alter the verdict, or order it to be altered in any *material* thing, nor to order the jury to retire and again consider of their verdict, after they had rendered it. [Chit. 648.]

6. The defendants could not be convicted as principals in the second degree, because not present, or aiding in the act. [1 Russ. 26.]

7. An indictment against an accessory must alledge that the principal committed the offence. [1 Russ. 41-2.]

8. The accessory may controvert the guilt of the principal. [Ib. 42, (margin) 39.]

9. In felonies created by statute, the doctrine of accessories applies, although not stated in the act. [1 Russ. 35, (margin,) 32.]

ATTORNEY GENERAL, contra, contended—

1. That there was no error in sending back the jury. That a jury may properly be sent back fifty times by the court in order to get a *certain* verdict—the court taking care (as was done in this case) to exercise no influence as to whether their verdict shall be one way or the other. [See State v. Givens, 5 A. R. 747; State v. Blackwell, 9 Ib. 79.]

2. Without asserting that the charge is correct, what is the punishment of an accessory before the fact, in a case like the present? The code (Dig. 440, § 13) provides that an accessory to murder shall be punished as the principal offender; and no mention is made in the code of the punishment of accessories in other offences. Was it the intention of the code that a different rule should apply to accessories in murder, from that which applies to accessories in other felonies, as respects the punishment?

GOLDTHWAITE, J.—1. We think the Attorney General is right in conceding the charge of the circuit court cannot be sustained. It was probably induced by the impression, either that the prisoners, if acquitted as principals, could not afterwards be indicted as accessories before the fact, or that the offence of assaulting with intent to commit murder, being only a misdemeanor at common law, could have no accessories, but that all concerned were punishable as principals. We shall briefly state our opinion of the law in each of these connections.

It is said by Lord Hale, that if one is indicted as principal, and acquitted, he cannot afterwards be indicted as an acces-

sory before the fact, though he admits the law was anciently otherwise. [1 Hale's P. C. 626.] Mr. Justice Foster, though he states the same doctrine as agreed by the commentators, says he is ignorant of the ground on which it rests. [Foster's C. L. 361, *et seq.*] It seems to us that this doctrine necessarily involves the idea that one may be convicted as an accessory on an indictment charging him as principal, for otherwise, the party thus indicted would inevitably escape. In this view, it is unnecessary to pronounce a determinate opinion, until the precise case arises, but it seems to be put at rest by what is conceded in Gordon's case, 1 Leach, 515, S. C., cited 1 East C. L. 352. There, the indictment amounted to nothing more than charging the prisoners as accessories before the fact, but the proof showed them to be principals in the second degree. It was held they were improperly convicted, but the judges considered an acquittal on this charge, would be no bar to a subsequent indictment, charging them as accessories. In Sowre's case, 1 Russell & R. 25, the prisoners were indicted as principals, but the evidence proved them accessories only, and they were recommended for pardon on the ground the conviction was wrong. The case before us is precisely the same in every respect, and that decision is conclusive, as we entirely concur in its reasonableness. If the conviction could be allowed under the circumstances in proof, the rule that the principal must be convicted or outlawed before the accessory is tried, would in effect be abrogated.

2. The general doctrine is, that there can be no accessories to crimes which are not felonious, but our penal code defines a felony to be any crime which is punishable capitally or by confinement in the penitentiary, (Digest, 439, § 8,) and Sowre's case, just referred to, shows that a statute felony, even when the offence originally at common law was a misdemeanor only, may have accessories before the fact. Indeed, it is said that when a statute makes an offence a felony, though it mention nothing of accessories, yet it virtually and consequentially extends to those who are accessories, whether before or after the fact. [1 Hale, 613; 1 Russell on Crimes, 32.] We refer to this general doctrine, that it may be seen the omission to prescribe the precise mode and

extent of punishment to be inflicted on accessories before the fact, in the penal code, except in cases of murder, is no ground to infer they cannot be punished at all.

3. Upon the other exceptions, relating to the sending out the jury to correct their informal verdicts, we think there is no error of which the prisoners can complain. It is possible the first verdict would be considered as a general finding of guilty on both counts, and therefore, if there was any error, the prisoner has had already the benefit of it. The others were simply informal verdicts, and we entertain no doubt the circuit court might properly direct the jury to retire, and return with one in due form.

For the error in the charge, the judgment, as to the prisoner suing out the writ of error, must be reversed, and the cause remanded for such proceedings as may legally be had. The prisoner, in the meantime, to remain in custody, unless discharged by due course of law.